## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DANARA MCLAURIN,             *

                              *

     **Plaintiff**

                              *

     **v.**                         *         **CIVIL NO. JKB-14-4053**

                              *

**VERIZON MARYLAND, INC.,**     *

                              *

     **Defendant**                *

                              *

*    *    *    *    *    *    *    *    *    *    *    *

## <u>MEMORANDUM</u>

Danara McLaurin ("Plaintiff") brought this *pro se* action against Verizon Maryland, Inc. ("Defendant"), alleging employment discrimination and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* Now pending before the Court is Defendant's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (ECF No. 7), filed on June 5, 2015. The issues have been briefed (ECF Nos. 7, 14, and 18), and no hearing is required, Local Rule 105.6 (D. Md. 2014). For the reasons explained below, Defendant's Motion to Dismiss will be GRANTED.

### *I. Background*[1]

Plaintiff, a fifty-eight-year-old African-American female, worked for Defendant as a Service Technician from July 1982 through December 2013. (ECF No. 1 ¶¶ 5, 13.) While employed by Defendant, Plaintiff alleges that she was "subjected to a series of harassing, threatening and intimidating workplace incidents." (*Id.* ¶ 6.) Specifically, Plaintiff alleges that a

---

[1] The facts are recited here as alleged by the Plaintiff, this being a motion to dismiss. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

white male coworker called her a "bitch"; that a white male coworker urinated in front of her; that an African-American supervisor, Renee Cuffee, falsely intimated that Plaintiff had stolen certain tools; and that a supervisor "cursed" Plaintiff in a meeting.[2]  (*Id.*)  Plaintiff further alleges that Defendant "deprived [her] of support that was routinely provided to [her] co-workers" by failing to replace a broken ladder, that Defendant denied her a pass to the central office, and that Defendant "subjected [her] to unwarranted discipline." (*Id.* ¶¶ 7-9.)

Plaintiff allegedly applied for another job for which she was "fully qualified," but Defendant gave that job to an African-American male with "less experience." (*Id.* ¶ 11.) Plaintiff also allegedly made "multiple complaints" to Defendant's EEO office, but "the harassment and intimidation to which [she] was being subjected continued." (*Id.* ¶ 12.)  Plaintiff claims that Renee Cuffee publicly threatened her with termination and that Plaintiff thereafter took an early retirement option to preserve her pension and benefits.  (*Id.* ¶ 13.)

Plaintiff filed a Charge of Discrimination ("Charging Document") with the Maryland Commission on Civil Rights and the Equal Employment Opportunity Commission ("EEOC") on August 18, 2013.[3]  (ECF No. 7 at 14.[4])  In the Charging Document, Plaintiff claimed she was subject to "harassment and a hostile work environment" during the course of her employment. (*Id.*)  Specifically, she claimed that her coworkers called her names such as "bitch" and "made other derogatory references"; that she was "cursed at by a Supervisor in meetings"; and that she was suspended for a day without pay on May 3, 2013, ostensibly for "installing a temporary line

---

[2] It is not clear from Plaintiff's Complaint whether this supervisor was Renee Cuffee.

[3] Plaintiff checked the boxes on the Charging Document for discrimination on the bases of race, color, sex, retaliation, age, and disability.  She identified the dates of discrimination as extending from May 1, 2013, to May 3, 2013.  She did not check the "continuing action" box to allege ongoing discrimination.

[4] Though Plaintiff identified the Charging Document as Exhibit A to her Complaint, no such exhibit was attached. Defendant, however, attached the Charging Document to its Motion to Dismiss.  The Court may rely on this document for purposes of resolving Defendant's Motion, as courts may "consider documents attached to the complaint, as well as documents attached to the motion to dismiss if they are integral to the complaint and their authenticity is not disputed."  *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 788 (D. Md. 2013).

without billing a customer." (*Id.*)  In a handwritten notation on the Charging Document, Plaintiff indicated that she heard a "Mike Schmidt was suspended and [Defendant] gave him [an] option to move 2 [a] different garag [*sic*]." (*Id.*)

Plaintiff filed suit on December 31, 2014, alleging employment discrimination in violation of Title VII on the bases of age (Count 1),[5] race (Count 2), and sex (Count 3), as well as a hostile work environment (Count 4).  Averring that she suffered "great anxiety, anguish, embarrassment, and humiliation" as well as "depression[] and continuing and severe mental distress" (ECF No. 1 ¶¶ 10, 14), Plaintiff added counts for what the Court interprets to be intentional infliction of emotional distress ("IIED") (Count 5) and negligent infliction of emotional distress ("NIED") (Count 6).

Defendant moved to dismiss on June 5, 2015.  (ECF No. 7.)  In its Motion, Defendant argued that Plaintiff failed to exhaust her administrative remedies with respect to most allegations; that Plaintiff failed to state a discrimination or hostility claim with respect to the properly exhausted allegations; that Plaintiff did not allege facts sufficient to establish the elements of a claim for IIED; and that Plaintiff cannot recover for NIED under Maryland law.

## II.  Legal Standards

### A.  Dismissal for Failure to Exhaust Administrative Remedies

A plaintiff's failure to exhaust administrative remedies for a Title VII or ADEA claim deprives federal courts of subject-matter jurisdiction over the claim. *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).  "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent . . . lawsuit." *Id.*

---

[5] Though Plaintiff classified her age discrimination claim as falling under Title VII, age discrimination is actually cognizable under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA").

(quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir.1996)).   A plaintiff fails to exhaust administrative remedies where the claims in the charging document "reference different time frames, actors, and discriminatory conduct than the central factual allegations in [the] formal suit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005).   Courts are "constrained by the four corners" of the charging document and claims naturally arising from an investigation thereof:   all other, unexhausted allegations must be dismissed.   *Brown v. Target, Inc.*, Civ. No. ELH-14-00950, 2015 WL 2452617, at *5 (D. Md. May 20, 2015).

### B.  *Dismissal for Failure to State a Claim*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.   An inference of a mere possibility of misconduct is not sufficient to support a plausible claim.   *Id.* at 679.   As the *Twombly* opinion noted, "Factual allegations must be enough to raise a right to relief above the speculative level."   550 U.S. at 555.   "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"   *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

When a defendant moves for dismissal under Rule 12(b)(6) for failure to state a claim, the court must evaluate the complaint's sufficiency, viewing all well-pleaded factual allegations as true and construing them in the light most favorable to the plaintiff.   *Ibarra*, 120 F.3d at 474.   A plaintiff filing *pro se* is held to a "less stringent standard[]" than is a lawyer, and the court

must construe *pro se* claims liberally, no matter how "inartfully pleaded." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even a *pro se* complaint must meet a minimum threshold of plausibility. *Letke v. Wells Fargo Home Mortg., Inc.*, Civ. No. RDB-12-3799, 2013 WL 6207836, at *2 (D. Md. Nov. 27, 2013).

### III. *Analysis*

#### A. *Administrative Exhaustion*

This Court lacks subject-matter jurisdiction over most of Plaintiff's allegations because she failed to exhaust her administrative remedies. Two of Plaintiff's allegations—that a coworker called her a "bitch" and that a supervisor "cursed" her (ECF No. 1 ¶ 6)—appear in the Charging Document. Conversely, Plaintiff's allegations regarding the missing tools, the broken ladder, the office pass, the rejection of Plaintiff's job application, the threatened termination, and Plaintiff's subsequent early retirement are not mentioned in the Charging Document. Nor are such allegations reasonably related to those identified in the Charging Document, nor likely to emerge after reasonable investigation. Courts are "not at liberty to read into administrative charges allegations they do not contain," *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013), and so this Court may not consider Plaintiff's unexhausted allegations.

Two remaining allegations present a closer call. In her Complaint, Plaintiff alleges that a white male coworker urinated in her presence. (ECF No. 1 ¶ 6.) The Court is skeptical whether such an allegation reasonably relates to the claims in the Charging Document. However, for the sake of argument, the Court will consider such allegation as emanating from Plaintiff's charge of "derogatory references" by coworkers. (ECF No. 7 at 14.)

Finally, Plaintiff alleges in her Complaint that Defendant subjected her to "unwarranted discipline." (ECF No. 1 ¶ 9.) In the Charging Document, Plaintiff described "unwarranted

5

disciplinary action" in the context of a one-day suspension without pay.  (ECF No. 7 at 14.)
Though the Court is troubled by Plaintiff's conclusory assertion in her Complaint, the Court will
assume that "unwarranted discipline" refers to the suspension noted in the Charging Document.

### B. *Employment Discrimination (Counts 1–3)*

Plaintiff alleges that Defendant discriminated against her on the bases of her age, race,
and sex.  Although Plaintiff does not identify a particular theory under Title VII or the ADEA,
she appears to allege disparate treatment.  A prima facie case for disparate treatment requires the
plaintiff to plead "(1) membership in a protected class; (2) satisfactory job performance; (3) an
adverse employment action; and (4) less favorable treatment than similarly situated employees
outside the protected class." *Linton v. Johns Hopkins Univ. Applied Physics Lab., LLC*, Civ. No.
JKB-10-276, 2011 WL 4549177, at *5 (D. Md. Sept. 28, 2011) (citing *White v. BFI Waste
Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)).

As an African-American woman, Plaintiff is indisputably a member of a protected class,
and "unwarranted discipline" likely constitutes an adverse employment action.  But Plaintiff has
not pleaded the remaining elements of the prima facie case for disparate treatment.  Reading the
Complaint in tandem with the Charging Document, it appears that Plaintiff was suspended for
installing a line without billing a customer.  (ECF No. 7 at 14.)  In other words, Plaintiff was
suspended precisely because her job performance was *un*satisfactory.  Moreover, Plaintiff has
insufficiently alleged that she was treated less favorably than an employee outside her class.
While a notation on the Charging Document suggests a "Mike Schmidt" was also suspended
(*id.*), it does not identify Mike Schmidt's age or race, and the Court cannot ascertain whether

Mike Schmidt was treated less harshly than Plaintiff for a similar offense.[6] Because Plaintiff failed to plead the prima facie case for disparate treatment, Counts 1–3 must be dismissed.

### C.  Hostile Work Environment (Count 4)

Plaintiff alleges that Defendant subjected her to a hostile work environment.  A prima facie case for hostility requires the plaintiff to allege harassing conduct that "(1) was unwelcome, (2) was based on a protected characteristic, (3) was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) was imputable to her employer."  *Gomez v. Burwell*, Civ. No. RWT 14-00580, 2015 WL 1522926, at *3 (D. Md. Apr. 2, 2015) (citing *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998)).  Actionable hostility requires more than a mere utterance of an offensive epithet or simple teasing and offhand comments, though an isolated incident of harassment can be actionable if extremely serious. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015).  Where the alleged harasser is the victim's coworker, "the employer is liable only if it was negligent in controlling working conditions."  *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013).

Plaintiff has not pleaded the prima facie case for hostility.  She alleges that one coworker called her a "bitch" and that another urinated in front of her (ECF No. 1 ¶ 6), yet she does not allege that Defendant negligently failed to control her working conditions, nor even that Defendant was aware of these incidents.  Because Plaintiff does not allege that Defendant "knew or should have known of the offensive conduct but failed to take appropriate corrective action," *Vance*, 133 S. Ct. at 2456, the acts of Plaintiff's coworkers cannot be imputed to Defendant. Moreover, even were Defendant responsible for such acts, Plaintiff has not alleged "severe or pervasive" harassment that "alter[s] the conditions of employment."  Aside from the coworker

---

[6] The notation indicates that Mike Schmidt was given an "option to move 2 [a] different garag [sic]."  The Court will not speculate as to why Mike Schmidt was given such an option, why he was suspended, whether his conduct paralleled Plaintiff's, or how his treatment compared with the treatment Plaintiff received.

incidents, Plaintiff alleges that a supervisor "cursed" her in a meeting.   (ECF No. 1 ¶ 6.)
Sporadic harsh language does not alter workplace conditions, and while isolated instances of
extreme harassment can be actionable, Plaintiff makes no such allegation here.   Title VII
prohibits an atmosphere permeated with intimidation and insult:   it does not establish a civility
code for the workplace.   *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).
Because Plaintiff does not allege severe or pervasive harassment, Count 4 must be dismissed.

### D.  IIED and NIED (Counts 5–6)

Plaintiff alleges that Defendant committed the torts of IIED and NIED.   The prima facie
case for IIED has four elements: (1) intentional or reckless conduct that is (2) extreme and
outrageous and is (3) causally connected to a plaintiff's emotional distress where (4) such
distress is severe.   *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 113 (Md. 2000).   To qualify as
"extreme and outrageous," a defendant's conduct must "go beyond all possible bounds of
decency" and "be regarded as atrocious, and utterly intolerable in a civilized community."
*Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977) (quoting Restatement (Second) of Torts § 46
cmt. d (Am. Law Inst. 1965)).   As for the resulting emotional trauma, it must be "severely
debilitating."   *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002).   In
Maryland, the IIED tort is "rarely viable," as "[e]ach element must be pled and proved with
specificity." *Id.* (quoting *Farasat v. Paulikas*, 32 F. Supp. 2d 244, 247 (D. Md. 1997)).

Plaintiff has not pleaded the prima facie case for IIED.   She alleges no extreme acts by
Defendant that exceed "all possible bounds of decency."   Moreover, while Plaintiff conclusorily
asserts that she suffered "anxiety, anguish, embarrassment, and humiliation" as well as
"depression[] and continuing and severe mental distress" (ECF No. 1 ¶¶ 10, 14), she alleges no
particular facts indicative of debilitating emotional trauma. Count 5 must therefore be dismissed.

Count 6 must also be dismissed, as the NIED tort is not cognizable under Maryland law. *See Alban v. Fiels*, 61 A.3d 867, 876 (Md. Ct. Spec. App. 2013).

## IV. Costs and Attorneys' Fees

In its Motion to Dismiss, Defendant requested that the Court award its "costs in this action including reasonable attorneys' fees." (ECF No. 7 at 1.) A district court has discretion to award attorneys' fees to a prevailing defendant in a Title VII case "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). The Court here makes no such finding, and it therefore denies Defendant's request for costs and attorneys' fees.

## V. Conclusion

For the foregoing reasons, an order shall enter DENYING Defendant's request for costs and attorneys' fees but otherwise GRANTING Defendant's Motion to Dismiss (ECF No. 7).

DATED this 26th day of August, 2015.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge

9